IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, An Iowa Corporation, ) ) ) Plaintiff, ) ) v. ) ) LEDO'S, INC., an Illinois corporation, LEDO ) PIZZA SYSTEM, INC., a Maryland corporation, ) and LEDO PIZZA CARRYOUTS, INC., a ) Florida corporation, ) ) Defendants. ) ) | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, AMCO INSURANCE COMPANY, An Iowa Corporation, by and through its attorneys, MEAGHER & GEER, P.L.L.P., states the following as its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, LEDO'S, INC., an Illinois corporation, LEDO PIZZA SYSTEM, INC., a Maryland corporation, and LEDO PIZZA CARRYOUTS, INC., a Florida corporation:

### Introduction

1. This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under a commercial general liability insurance policy and a commercial umbrella liability insurance policy, both of which were issued by AMCO Insurance Company ("Plaintiff" or "AMCO") and issued to Ledo's, Inc. Plaintiff seeks a declaration from this Court regarding the extent of the Plaintiff's rights and obligations under the Policy, if any, for the allegations in the lawsuit entitled, *Ledo Pizza System, Inc. and Ledo Pizza Carryouts, Inc. v. Ledo's, Inc. d/b/a Ledo's Pizza,* case no. 1:20-cv-07350, filed in the U.S. District Court for the Northern District of

Illinois, Eastern Division (the "Underlying Suit"). (A copy of the Underlying Complaint is attached as Exhibit A.)

2. Plaintiff seeks a declaration from this Court that it owes no obligation under its respective policies to defend and/or to indemnify Ledo's, Inc. with regard to the allegations in the Complaint.

**Jurisdiction and Venue**

3. Plaintiff, AMCO Insurance Company ("Plaintiff" or "AMCO"), is an insurance company incorporated under the laws of the state of Iowa, with its principal place of business in Des Moines, Iowa. AMCO was authorized to issue policies of insurance in the state of Illinois.

4. Defendant, Ledo's, Inc. ("Ledo's"), is a corporation organized under the laws of the state of Illinois, with its principal place of business located at 5525 S. LaGrange Road, Countryside, Illinois. Ledo's does business as Ledo's Pizza, a restaurant that conducts business primarily in Cook County and throughout the Northern District of Illinois. Ledo's is the named insured under the commercial general liability and commercial umbrella insurance policies issued by AMCO, which are at issue and further described in this Complaint.

5. Defendant, Ledo Pizza System, Inc. ("LP System"), is a corporation organized under the laws of the state of Maryland, with its principle place of business located at 41 Old Solomons Island Road, Annapolis, Maryland. Plaintiff names LP System as a potentially interested party by virtue of its status as the named plaintiff in the Underlying Suit. No affirmative relief is sought against LP System. (*See* Exhibit A.)

6. Defendant, Ledo Pizza Carryouts, Inc. ("LP Carryouts"), is a corporation organized under the laws of the state of Florida, with its principle place of business located at

2015 La Porte Drive, Palm Beach Gardens, Florida. Plaintiff names LP Carryouts as a potentially interested party by virtue of its status as the named plaintiff in the Underlying Suit. No affirmative relief is sought against LP Carryouts. (*See* Exhibit A.)

7. LP System and LP Carryouts allege in the Underlying Complaint that Ledo's, by doing business as Ledo's Pizza, is an unauthorized use of various federally-registered service marks and trademarks owned by LP System and LP Carryouts in violation of the Federal Trademark Act [15 U.S.C. §§ 1051-1127] ("Lanham Act").

8. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between the Plaintiff, AMCO, on the one hand, and Defendants, Ledo's, LP System and LP Carryouts on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying Ledo's in the Underlying Suit well exceeds $75,000.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in the Northern District of Illinois, including where the trademark violations alleged in the Underlying Complaint occurred and where the underlying lawsuit is pending.

10. An actual justiciable controversy exists between AMCO, on the one hand, and Ledo's, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**The Underlying Trademark Infringement Lawsuit**

11. On December 11, 2020, Defendants, LP System and LP Carryouts ("Underlying Plaintiffs"), filed a complaint directed against Ledo's in the U.S. District Court for the Northern

District of Illinois, Eastern Division, which is entitled, *Ledo Pizza System, Inc. and Ledo Pizza Carryouts, Inc. v. Ledo's, Inc. d/b/a Ledo's Pizza,* case no. 1:20-cv-07350 (the "Underlying Suit"). (A copy of the Underlying Complaint is attached as Exhibit A.)

12. The Underlying Complaint alleges that the Underlying Plaintiffs own the federal trademark registration for the mark, "Ledo Pizza®", and its derivations "Ledo Pizza," Ledo Pizza and Pasta," and "Ledo Pizza and Subs," used in connection with the operation of franchised restaurants that serve pizza and pasta in the Mid-Atlantic and Southeastern United States under U.S. Reg. No. 1,516,567 filed on December 13, 1988, and U.S. Reg. No. 2,712,869 filed on May 6, 2003. (Exhibit A, ¶¶ 6-12).

13. The Underlying Plaintiffs allege that they have invested millions of dollars in advertisement and promotion of the Ledo Pizza brand and trademark, in order to establish a strong bond between the Ledo Pizza name, its products and customer goodwill throughout the Mid-Atlantic and Southeastern United States.

14. The Underlying Complaint alleges that Ledo's sells pizza, Italian dishes and sandwiches, as well as shirts and jackets containing the printed name "Ledo's Pizza." The Underlying Complaint further alleges that Ledo's uses the name "Ledo's Pizza" in its advertising, on its website and in its domain name.

15. The Underlying Complaint alleges that Underlying Plaintiffs sent a letter to Ledo's on September 29, 2020 that Ledo's use of the Ledo Pizza® service mark and trademark was unauthorized and in violation of the Federal and State trademark law. In the letter, the Underlying Plaintiffs demanded that Ledo's immediately cease use of the Ledo Pizza service mark and trademark.

16. The Underlying Complaint further alleges that, while Ledo's responded to this letter, it has failed to cease its unauthorized use of the Ledo Pizza® service mark or trademark.

17. The Underlying Complaint alleges that Ledo's operation of its restaurant under the name Ledo's Pizza and Ledo's domain name, www.ledospizza.net, is likely to confuse customers that Ledo's is affiliated with the Underlying Plaintiffs.

18. The Underlying Complaint contains the following causes of action:

- Count I is titled "Trade Mark Infringement" and alleges a violation of the Federal Trademark Act, 15 U.S.C. §§ 1051-1127 ("Lanham Act"). Specifically, it is alleged that Ledo's has acted willfully in its unauthorized use of the Ledo Pizza® service mark and trademark, which has and will cause irreparable harm to the Underlying Plaintiffs by causing confusion among customers and damaging the goodwill and reputation built by the Underlying Plaintiffs over the past 60 years.

- Count II is titled "Unfair Competition and False Designation of Origin" and alleges a violation of 15 U.S.C. § 1125(a). Specifically, it alleges that Ledo's use of the Underlying Plaintiffs' Marks is misleading and likely cause confusion, mistake or to deceive as to the affiliation, connection or association of Ledo's business with Ledo Pizza®.

- Count III is titled "Common Law Unfair Competition Trade Name Infringement" and alleges that the Underlying Plaintiffs use of the mark "Ledo Pizza®" since 1955 has established a common law right to the exclusive use of the mark and any derivatives thereof. It further alleges that Ledo's has engaged in unfair competition through its unauthorized use and infringement of the Underlying Plaintiffs' Mark.

19. The Underlying Complaint seeks to preliminarily and permanently enjoin Ledo's from advertising or otherwise using the protected trademark Ledo Pizza® or any of its derivations, in addition to monetary damages, attorneys' fees, costs and any other relief, as the Court deems proper.

**The AMCO Commercial General Liability Policy**

20. AMCO issued to Ledo's a Commercial General Liability ("CGL") Policy No. ACP GLAO 7176133460, effective May 6, 2020 to May 6, 2021. (A copy of the AMCO CGL Policy is attached hereto and made a part hereof as Exhibit B). The AMCO policy's CGL

coverage part includes coverage for Bodily Injury and Property Damage (Coverage A) and Personal and Advertising Injury (Coverage B).

21. The Underlying Complaint does not seek damages for Bodily Injury or Property Damage as those terms are defined in the AMCO policy's CGL coverage.

22. The AMCO CGL Policy provides the following coverage:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. [. . .]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

23. The AMCO CGL Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**
**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
 a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
 b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[. . .]

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[. . .]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    [. . .]

    f.  The use of another's advertising idea in your "advertisement"; or
    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    [. . .]

17. "Property damage" means:
    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

24. The AMCO CGL Policy contains the following relevant exclusions:

    **2. Exclusions**
    This insurance does not apply to:
    a.  **Knowing Violation Of Rights Of Another**
        "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

        [. . .]

    i.  **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
        "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual

property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

[. . .]

l. **Unauthorized Use Of Another's Name Or Product** "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

\* \* \* \* \*

## The AMCO Commercial Umbrella Liability Policy

25. AMCO issued to Ledo's, Inc. a Commercial Umbrella Liability Policy ("Umbrella Policy") No. ACP CAA 7176133460, effective May 6, 2020 to May 6, 2021. (A copy of the Umbrella Policy is attached hereto and made a part hereof as Exhibit C.)

26. The Underlying Complaint does not seek damages for Bodily Injury or Property Damage as those terms are defined in the AMCO Umbrella Policy.

27. The AMCO Umbrella Policy provides the following coverages:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
[. . .]

**INSURING AGREEMENTS**

A. **Coverage A - Excess Follow Form Liability Insurance**
   1. Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:
      a. any contrary provision contained in this policy; or
      b. any provision in this policy for which a similar provision is not contained in "underlying insurance".
   2. With respect to the exceptions stated above, the provisions of this policy will apply.
      [. . .]

    **4.** Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".
    [. . .]

  **B. Coverage B – Umbrella Liability Insurance**
    **1**. Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

    **2**. Damages because of "bodily injury" include damages claimed by any person or organization for care or loss of services resulting at any time from "bodily injury".
    [. . .]

    **5**. Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance".
    [. . .]

    **11**. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the "policy period".

28.   The AMCO Umbrella Policy contains the following relevant definitions:

  **DEFINITIONS**
  **A. Applicable to Coverage A and Coverage B**
  As used in Coverage A and Coverage B:

  [. . .]

    **4**. "Loss" means those sums actually paid in the settlement or satisfaction of a claim which the "insured" is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.
    [. . .]

    **6**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
     [. . .]

    **12**. "Suit" means a civil proceeding in which injuries or damages to which this insurance applies are alleged. "Suit" includes:
        **a**. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
        **b**. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

    **13**. "Underlying insurance" means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy, including any type of self insurance or alternative method by which the "insured" arranges for funding of legal liabilities that affords coverage that this policy covers.

    "Underlying insurance" does not include any Extended Reporting Periods on the policies shown in the Declarations. Extended Reporting Periods must be endorsed onto this policy by us.
    [. . .]

**B. Applicable to Coverage A Only**
    As used in Coverage A:
    **1**. "Injury or damage" means any injury or damage covered in the *applicable* "underlying insurance" arising from an "occurrence".
    [. . .]

**C. Applicable to Coverage B Only**
    As used in Coverage B:
    **1**. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

    **2**. "Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.
    [. . .]

    **9**. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses committed in the course of your business:
    [. . .]
        **g**. the use of another's advertising idea in your "advertisement"; or
        **h**. infringing upon another's copyright, trade dress or slogan in your "advertisement".

    **10**. "Property damage" means:

      **a**. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b**. loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

29. The AMCO Umbrella Policy contains the following relevant exclusions:

**EXCLUSIONS**
[. . .]

**C. Applicable to Coverage B Only**
Under Coverage B, this insurance does not apply to:
**14**. "Personal and Advertising Injury"
    **a**. Knowing Violation Of Rights Of Another
      Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
      [. . .]

    **h**. Infringement Of Copyright, Patent, Trademark, Trade Secret Or Trade Name
      Arising out of the infringement of copyright, patent, trademark, trade secret, trade name, or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.
      [. . .]

    **k**. Unauthorized Use Of Another's Name Or Product
      Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## Ledo's, Inc. Tender to AMCO

30. On or about December of 2020, Ledo's tendered to AMCO the defense and indemnity of the Underlying Suit.

31. On or about January 26, 2021, AMCO notified Ledo's that it had reviewed the applicable Policies and determined that there was no defense or indemnity coverage in connection with the Underlying Complaint, and requested that Ledo's withdraw its tender by February 25, 2021.

32. As of the date of this filing, Ledo's has not withdrawn its tender.

## COUNT I – DECLARATORY JUDGMENT
### (Commercial General Liability Policy)

33. AMCO repeats and realleges the allegations in Paragraphs 1 through 32 as though fully set forth herein as paragraph 33.

34. The AMCO Commercial General Liability (CGL) Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Underlying Complaint is premised entirely on allegations of trademark and service mark infringement arising from Ledo's alleged unauthorized use of "Ledo's Pizza", but contains no allegations related bodily injury, sickness or death. Likewise, the Underlying Complaint contains no allegations of property damage. Therefore, AMCO owes no duty to provide coverage for bodily injury or property damage under Coverage A of the CGL Policy.

35. The CGL Policy defines "personal and advertising injury" as "an injury, including consequential 'bodily injury', arising out of [. . .] the use of another's advertising idea in your 'advertisement'; or infringing upon another's copyright, trade dress or slogan in your 'advertisement'." The CGL Policy's definition of "personal and advertising injury" does not include trademark infringement. Therefore, the Underlying Complaint, which is premised entirely on trademark infringement claims, AMCO owes no duty under Coverage B of the CGL Policy to provide coverage for personal and advertising injury.

36. The exclusion under the CGL Policy titled "Infringement of Copyright, Patent, Trademark or Trade Secret" expressly excludes coverage for "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. [. . .] However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." The Underlying Complaint is premised entirely on allegations of trademark infringement and, therefore, AMCO is entitled to a declaration that it owes no duty under Coverage B of the CGL Policy to provide "personal and advertising injury" coverage for the Underlying Suit because trademark infringement claims are expressly excluded by the CGL Policy.

37. The Underlying Complaint alleges that Ledo's has and continues the unauthorized use of the underlying plaintiffs' trademark in Ledo's domain name and on its website. The exclusion under the CGL Policy titled "Unauthorized Use Of Another's Name Or Product" expressly excludes coverage for "'personal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers." Accordingly, AMCO is entitled to a declaration that it owes no duty under Coverage B of the CGL Policy to provide "personal and advertising injury" coverage for the underlying claims of trademark infringement arising from the alleged use of the underlying plaintiff's trademark in Ledo's domain name and on its website.

38. The exclusion under the CGL Policy titled "Knowing Violation of Rights of Another" excludes coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'." Therefore, AMCO is entitled to a declaration that it

owes no duty to provide coverage under Coverage B of the CGL Policy to the extent that it is found that Ledo's knowingly violated the underlying plaintiffs' rights, pursuant to this exclusion.

39. The claims of unfair competition alleged in the Underlying Complaint do not fall within the CGL Policy's coverage for "personal or advertising injury" as he CGL Policy defines that coverage. Accordingly, to the extent that the claims for violations of the common law right to trade and unfair competition do not arise from Ledo's alleged trademark infringement, the CGL Policy does not provide coverage for such claims.

40. AMCO specifically denies any and all liability under the terms and provisions of the aforementioned CGL Policy of insurance issued to Ledo's, Inc., and insists that it is not obligated to defend or indemnify any judgment entered against Ledo's in the Underlying Suit and, by reason of such demand, AMCO is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

41. An actual controversy exists between AMCO and Ledo's, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, AMCO INSURANCE COMPANY, respectfully prays that this Honorable Court:

    A. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the AMCO Commercial General Liability Policy;

    B. Declare that AMCO owes no duty to defend or indemnify Ledo's, Inc. under the Commercial General Liability Policy No. ACP GLAO 7176133460, in connection with the Underlying Complaint filed in the U.S. District Court for

        the Northern District of Illinois, Eastern Division, under case no. 1:20-cv-07350;

C.    That AMCO owes no defense or indemnity to Ledo's, Inc. under the CGL Policy for the Underlying Suit, because the CGL Policy's coverage for "personal and advertising injury" is not triggered by the allegations and claims in the Underlying Complaint;

D.    That AMCO owes no duty to defend or indemnify Ledo's, Inc. under the CGL Policy with respect to the Underlying Suit due to one or more of the policy exclusions outlined above;

E.    That AMCO owes no duty to defend or indemnify Ledo's, Inc. under the CGL Policy with respect to the common law claims of unfair competition alleged in the Underlying Complaint, to the extent that those claims are deemed separate and distinct from Ledo's alleged trademark infringement; and

F.    Any and all other relief that this Court deems just and equitable under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT
## (AMCO Commercial Liability Umbrella Policy)

42.    AMCO repeats and realleges the allegations in Paragraphs 1 through 41 as though fully set forth herein as paragraph 42.

43.    AMCO owes no duty to defend under Coverage A of the Umbrella Policy with respect to the Underlying Suit, because there is no coverage under the CGL Policy for the Underlying Suit for reasons other than exhaustion of an aggregate limit of insurance by payment of claims. (Exhibit C, § A.4.).

44.    Coverage B of the Umbrella Policy defines "bodily injury" as "physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom." The Underlying Complaint is premised entirely on allegations of trademark and service mark infringement arising from Ledo's alleged unauthorized use of "Ledo's Pizza", but contains no allegations

related physical injury, sickness or death.  Likewise, the Underlying Complaint contains no allegations of property damage, which are defined as "physical injury to tangible property" and loss of use of tangible property."  Therefore, AMCO owes no duty to provide coverage for bodily injury or property damage under Coverage B of the Umbrella Policy.

45. Coverage B of the Umbrella Policy defines "personal and advertising injury", in relevant part, as an injury "arising out of one or more of the following offenses committed in the course of your business," including "the use of another's advertising idea in your 'advertisement'" or "infringing upon another's copyright, trade dress or slogan in your 'advertisement'."  The Umbrella Policy's definition of "personal and advertising injury" does not include trademark infringement and, therefore, AMCO owes no duty to provide coverage for personal and advertising injury under Coverage B of the Umbrella Policy with respect to the Underlying Suit that is premised on allegations of trademark infringement.

46. In addition, the exclusion under Coverage B of the Umbrella Policy titled "Infringement of Copyright, Patent, Trademark or Trade Secret" expressly excludes coverage for personal and advertising injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. [. . .] However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."  The Underlying Complaint is premised entirely on allegations of infringement of the Ledo Pizza® trademark and, therefore, AMCO is entitled to a declaration that it owes no duty under Coverage B of the Umbrella Policy to provide "personal and advertising injury" coverage for the Underlying Suit.

47. The Underlying Complaint alleges that Ledo's unauthorized use of the underlying plaintiffs' trademark in its domain name and on its website is an infringement of its trademark that likely confuses the underlying plaintiffs' customers.  The exclusion under the Umbrella

Policy titled "Unauthorized Use Of Another's Name Or Product" expressly excludes coverage for personal and advertising injury "arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers." Accordingly, AMCO is entitled to a declaration that it owes no duty under Coverage B of the Umbrella Policy to provide "personal and advertising injury" coverage for the underlying allegations of trademark infringement arising from the alleged use of the underlying plaintiff's trademark in Ledo's domain name and on its website.

48. The exclusion under the Umbrella Policy titled "Knowing Violation of Rights of Another" excludes coverage for personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'." Therefore, AMCO is entitled to a declaration that it owes no duty to provide coverage under Coverage B of the Umbrella Policy to the extent that it is found that Ledo's knowingly infringed on the underlying plaintiffs' trademark.

49. The claims of unfair competition alleged in the Underlying Complaint do not fall within the Umbrella Policy's coverage for "personal or advertising injury" as that coverage is defined by the Umbrella Policy. Accordingly, to the extent that the common law claims of unfair competition do not arise from Ledo's alleged trademark infringement, the Umbrella Policy does not provide coverage for such claims.

50. AMCO specifically denies any and all liability under the terms and provisions of the aforementioned Umbrella Policy issued to Ledo's, Inc., and insists that it is not obligated to defend or indemnify any judgment entered in the Underlying Suit and, by reason of such demand, AMCO is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

51. An actual controversy exists between AMCO and Ledo's, Inc., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, AMCO INSURANCE COMPANY, respectfully prays that this Honorable Court:

A. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the AMCO Commercial Umbrella Liability Policy;

B. Declare that AMCO owes no duty to defend or indemnify Ledo's, Inc. under the Commercial Umbrella Liability Policy No. ACP CAA 7176133460, in connection with the Underlying Complaint filed in the U.S. District Court for the Northern District of Illinois, Eastern Division, under case no. 1:20-cv-07350;

C. That AMCO owes no defense or indemnity to Ledo's, Inc. under the Umbrella Policy for the Underlying Suit, because the Umbrella Policy's coverage for "personal and advertising injury" is not triggered by the allegations and claims in the Underlying Complaint;

D. That AMCO owes no duty to defend or indemnify Ledo's, Inc. under the Umbrella Policy with respect to the Underlying Suit due to one or more of the policy exclusions outlined above;

E. That AMCO owes no duty to defend or indemnify Ledo's, Inc. under the Umbrella Policy with respect to the common law claims of unfair competition, to the extent that those claims are deemed separate and distinct from Ledo's alleged trademark infringement; and

F. Any and all other relief that this Court deems just and equitable under the facts and circumstances.

                                                     AMCO INSURANCE COMPANY,

                                                     By: _____
                                                              One of Its Attorneys

Kurt Zitzer
Matthew R. Bloom

MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Our File No.:	56597.00223
kzitzer@meagher.com
mbloom@meagher.com