IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, an Iowa Corporation, | ) ) ) |
| Plaintiff, | ) ) ) No. 21 C 2972 |
| v. | ) ) ) Judge Ronald A. Guzmán |
| LEDO'S, INC., an Illinois Corporation, LEDO PIZZA SYSTEM, INC., a Maryland Corporation, and LEDO PIZZA CARRYOUTS, INC., a Florida Corporation, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On June 3, 2021, Plaintiff AMCO Insurance Company filed this lawsuit seeking declarations pursuant to 28 U.S.C. § 2201 et seq. that it has no duty to defend or indemnify its insured, Defendant Ledo's, Inc., against a lawsuit brought by third parties against Ledo's, Inc. Ledo's, Inc., asserting that AMCO vexatiously and unreasonably delayed settling its claim, brought counterclaims for breach of contract and a violation of 215 ILCS 5/155. In the parties' cross-motions for summary judgment that are now before the Court, they debate whether the claims in the underlying lawsuit potentially fall within the coverage terms of a commercial general liability policy and umbrella policy issued to Ledo's, Inc. For the reasons set forth below, the Court finds that AMCO has no duty to defend or indemnify and therefore denies Ledo's, Inc.'s motion for summary judgment and grants AMCO's motion for summary judgment, which entitles AMCO to judgment against Ledo's, Inc. on all claims and counterclaims.

## BACKGROUND

In resolving cross-motions for summary judgment, as to each motion, the Court considers the facts in the light most favorable to the non-movant. *See AU Elecs., Inc. v. Harleysville Grp., Inc.*, 82 F. Supp. 3d 805, 807 (N.D. Ill. 2015). Summary judgment is proper "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 816 (7th Cir. 2010) (resolving insurance coverage dispute as to litigation defense at summary judgment). For the purposes of the cross-motions for summary judgment, unless otherwise noted, the following facts are undisputed.

### A. Underlying Lawsuit

On December 11, 2020, Ledo Pizza System, Inc. ("Ledo System") and Ledo Pizza Carryouts, Inc. ("Ledo Carryouts"), sued Ledo's, Inc., an Illinois corporation with a principal place of business in Countryside, Illinois, in the Northern District of Illinois. (Dkt. #31-4, pgs. 3-4); *Ledo Pizza System, Inc. v. Ledo's, Inc.*, No. 20 C 7350 (N.D. Ill.). The following are allegations from the verified complaint in that case, with page numbers from Docket No. 31-4.

Ledo System and Ledo Carryouts "operate a highly recognizable chain of restaurants with over 100 licensed and franchised locations in the United States." Ledo Carryouts owns the trademark and service mark "LEDO PIZZA®, and licenses Ledo System to use the trademark and related intellectual property in the sale of franchised restaurants operating under the names "LEDO PIZZA," "LEDO PIZZA AND PASTA" AND "LEDO PIZZA AND SUBS." (*Id*., pg. 3.) Ledo System and Ledo Carryouts have a trademark in the mark Ledo Pizza®; they sell "a special type of pizza" with "a secret recipe, proprietary ingredients and a distinctive rectangular presentation." (*Id*., pg. 4.) Ledo System's "proprietary products" also include "subs, salads and Italian entrees." (*Id*.) The "products and services are delivered to the public under a uniform business format utilizing specially designed equipment, methods, procedures and designs at Ledo Pizza® franchise locations," and Ledo Carryouts and System "do not offer delivery . . . from [] franchise locations to its consumers." (*Id*., pg. 10.) "Customers have come to recognize the distinctive pizza presentation and associate Ledo Pizza with quality products." (*Id*., pgs. 4-5.)

"[O]ver the last sixty years," "the name Ledo Pizza has become highly renowned in the Mid-Atlantic and Southeastern United States" and has garnered even nationwide acclaim. (*Id*., pg. 4.) "[T]he Ledo Pizza trademark as a strong, arbitrary mark that warrants broad protection in both related and unrelated product and/or service classes." (*Id*., pg. 3.) Ledo System and Ledo Carryouts own the domain names www.ledopizza.com and www.ledospizza.com. (*Id*., pg. 7.)

Ledo's, Inc. "does business as Ledo's Pizza, a restaurant selling pizza Italian food, and apparel" imprinted "with 'Ledo's Pizza,'" and operates a website, www.ledopizza.net, on which it claims to "deliver frozen pizza" and "ship[] pizza products across the entire United States." (*Id*., pgs. 2-3, 4, 6, 7.)

Ledo System and Ledo Carryouts "are not affiliated with [Ledo's, Inc.] in any fashion and have not authorized" Ledo's, Inc. to use "the LEDO PIZZA® service mark and/or trademark or any of the Marks at any time." (*Id*., pg. 6.) Ledo's, Inc., though, "advertises itself using the "LEDO PIZZA® service mark and/or trademark," and is "likely to cause confusion among consumers that [Ledo's, Inc.] is authorized to advertise and deliver Plaintiffs' products, or otherwise that [Ledo's, Inc.] is affiliated with Plaintiffs." (*Id*.) Further, "[Ledo's, Inc.'s] operation of a pizza restaurant under the name 'Ledo's Pizza' while selling food products almost identical to Plaintiffs' Proprietary Products" is likely to confuse consumers that Plaintiffs and Defendant are affiliated." (*Id*.) The complaint contains three counts, designated as: Count I (Trade Mark Infringement); Count II (Unfair Competition and False Designation of Origin); and Count III (Common Law Unfair Competition Trade Name Infringement). (*Id*., pgs. 8-11.) The first two counts reference the Lanham Act, 15 U.S.C. §§ 1051-1127.

Ledo's, Inc. asserts, over AMCO's authenticity objection, that Ledo System and Ledo Carryouts in the course of that lawsuit provided a settlement letter to the court. Ledo's, Inc. provides what appears to be a small excerpt from the letter, in which Ledo System and Ledo Carryouts described the "unique" qualities of their pizza, including a "proprietary sauce, smoked provolone cheese, thin crust, and distinctive rectangular presentation with square cut pieces." (Dkt. #31-5, pg. 3.) They refer to Ledo's, Inc. as an Illinois single restaurant selling "traditional round pizzas" that are "cut[] [] into squares similar to Ledo" and marketed for shipping nationwide. (*Id.*)

Ledo's, Inc. tendered the defense of that underlying lawsuit to AMCO under the insurance policies AMCO issued to Ledo's, Inc.

### B. The Insurance Policies

As is relevant here, AMCO issued two insurance policies (collectively "the policies") naming as the insured Ledo's, Inc., both effective from May 6, 2020, to May 6, 2021: (1) a commercial general liability policy; and (2) a commercial liability umbrella policy. (Dkt. #31-3; Dkt. #31-4; Ledo's, Inc. Statement of Facts ("SOF") ¶ 6; ECF No. 31; AMCO Resp. SOF ¶ 6; Dkt. #35.)[1] Both were in force as of the time of the underlying lawsuit.

The parties focus on the terms of the commercial general liability policy, most material parts of which are echoed in the umbrella policy. They assume without discussion that AMCO's duty to defend turns on the interpretation of the commercial general liability policy without reference to the umbrella policy terms, an assumption the Court accepts. The commercial general liability policy provides, in relevant parts:

**SECTION I – COVERAGES**
. . .
**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

---

[1] AMCO purports to dispute the policies Ledo's, Inc. attached to its motion for summary judgment "to the extent that [they] are inconsistent with the certified copies" AMCO submitted. (Dkt. #35, pg. 2.) As AMCO does not identify any inconsistencies, any objection is improperly supported and will be disregarded for the purposes of this memorandum opinion and order.

. . .

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violations Of Rights Of Another**
   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   . . .

   i. **"Infringement of Copyright, Patent, Trademark Or Trade Secret**
   "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

   However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress, or slogan.

   . . .

   l. **Unauthorized Use of Another's Name Or Product**
   "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

. . .

**SECTION V – DEFINITIONS**

1. Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, services, products or services for the purposes of attracting customers or supporters is considered an advertisement.

. . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   . . .

   g. "Infringing upon another's copyright, trade dress or slogan in your "advertisement".

4

. . .

18. "Suit" is "a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged.

(Dkt. #31-3; SOF ¶¶ 8-13; AMCO Resp. SOF ¶¶ 8-13; *see also* Dkt. #12-1, pgs. 83-118 (umbrella policy).)

AMCO declined to defend Ledo's, Inc. in the underlying lawsuit, citing claims of "trade mark infringement, unfair competition and false designation of origin, and common law unfair competition trade name infringement" that would be excluded under provisions disclaiming coverage "of knowing violation of rights of another, infringement of copyright, patent, trademark or trade secret, as well as unauthorized use of another's name or product." (SOF ¶¶ 20-21; AMCO Resp. SOF ¶¶ 20-21; Dkt. #34, AMCO's Cross-Mot. SOF ¶¶ 11-12.) After additional communications between AMCO and Ledo's, Inc. in which they continued to disagree regarding insurance coverage, AMCO filed this lawsuit.

### C. This Lawsuit

Invoking the Court's diversity jurisdiction, AMCO, an Iowa-incorporated insurance company principally doing business out of Des Moines, Iowa, seeks a declaratory judgment that it owes no duty to defend or indemnify Ledo's, Inc. under the policies. Ledo's, Inc. disputes AMCO's coverage determination and asserts that AMCO breached its contracts and vexatiously and unreasonably delayed settling its claim. AMCO also named as Defendants Ledo System and Ledo Carryouts, who are citizens of Maryland and Florida, respectively; AMCO's requested relief, though, relates solely to the Court interpreting and declaring its obligations under the policies issued to Ledo's, Inc. AMCO has not sought judgment as to Ledo System and Ledo Carryouts, which have not participated in the summary judgment briefing.

## DISCUSSION

Ledo's, Inc. and AMCO's cross-motions turn on whether Ledo System and Ledo Carryouts allege only trademark claims or also include a trade dress claim in the underlying lawsuit.[2] If they bring only trademark claims, AMCO has no duty to defend or indemnify Ledo's, Inc. under the policies and is entitled to judgment.

### A. Interpretation of Insurance Policies Under State Law

"The interpretation of an insurance policy is a matter of state law." *Windridge of Naperville Condo. Ass'n v. Phila. Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (cleaned up). The parties invoke Illinois law, under which the court construes an insurance policy and determines the parties' resulting rights and obligations as a matter of law. *Crum & Forster*

---

[2] Ledo's, Inc. also argues that the "knowing violation" exclusion is inapplicable here (Dkt. #30, pg. 9), but AMCO does not respond to that argument in its brief. (Dkt. #33.) The Court need not further address that exclusion given its determination on the foregoing issue.

*Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). The Court's primary objective is to ascertain and give effect to the parties' intention, as expressed in the policy language. *Windridge*, 932 F.3d at 1039 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). The Court must construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Id.* (citing *Travelers Ins. Co. v. Eljer Mfg.*, 757 N.E.2d 481, 491 (Ill. 2001)).

An insurer must provide a defense for its insured when the allegations in the complaint are even potentially within the scope of the policy's coverage. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017) (citation omitted). "'This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy.'" *Id.* (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006)). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 269 (7th Cir. 2016), *as amended* (Jan. 25, 2017) (citing Illinois law). Because the duty to defend does not hinge on the drafting skills or preferences of the plaintiff in the underlying action, the Court "should not simply look to the particular legal theories pursued by the claimant, but must focus on the allegedly tortious conduct on which the lawsuit is based." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) (citing *Hurst–Rosche Eng'rs, Inc. v. Com. Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995)); *see also State Farm Fire & Cas. Co. v. Young*, 968 N.E.2d 759, 763 (Ill. App. Ct. 2012) ("A court answers the question of whether a duty to defend exists by comparing the facts alleged in the underlying complaint to the language of the insurance policy.").

The parties here debate whether the subject matter of the underlying lawsuit brings it within (or potentially within) the policies' coverage. AMCO contends that the underlying lawsuit involves only trademark infringement claims that are excluded from coverage under Section I.B.2.i of the commercial liability policy, while Ledo's, Inc. maintains that the state lawsuit at least potentially also involves a "trade dress" claim, such that it falls within the listed exception to the exclusion in Section I.B.2.i.

### B. The Lanham Act's Trade Dress Protection

The Lanham Act protects more than "just word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress'—a category that" now "encompass[es] the design of a product." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (citations omitted). "[T]rade dress of a product is essentially its total image and overall appearance," including "size shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992) (cleaned up, citation omitted). While a "design or package that acquires [a] secondary meaning . . . is a trade dress that may not be used in a manner likely to cause confusion as to the origin . . . of the goods," "trade dress protection cannot be claimed for product features that are functional." *Aluminum Trailer Co. v. Westchester Fire Ins. Co.*, 522 F. Supp. 3d 464, 470 (N.D. Ind. 2021) (cleaned up) (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)).

6

In analyzing trade dress claims brought in similar contexts, courts examine the overall "look and feel" of the relevant product or storefront, *see Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 890 (N.D. Ill. 1999), "which can include "color scheme" and font of signage, décor, or packaging. *See Dunkin' Donuts Franchised Rests. LLC v. Elkhatib*, No. 09 C 1912, 2009 WL 2192753, at *4 (N.D. Ill. July 17, 2009). As part of their trade dress, entities also may "seek to protect [their] own distinctive blend and manner of implementing" their chosen themes, but they may not protect "concepts as general as a 'Hollywood theme' or 'art deco appearance,' which may be executed in a myriad of ways." *Planet Hollywood*, 80 F. Supp. 2d at 891.

Under Illinois law, trade dress infringement and trademark infringement are distinct claims. *Greenwich Ins. Co. v. RPS Prods., Inc.*, 882 N.E.2d 1202, 1212 (Ill. App. Ct. 2008). The Court therefore must examine whether Ledo System and Ledo Carryouts allege "the substance of a trade dress claim" in their complaint in the underlying lawsuit. *Rosemoor Suites, LLC v. Harleysville Lake States Ins. Co.*, 444 F. Supp. 3d 902, 906 (N.D. Ill. 2020) (citations omitted). While a complaint must do more than simply reference "trade dress," it need not contain a specific "trade dress" claim. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (explaining that Illinois courts "give little weight to the legal label that characterizes the underlying allegations" but "[i]nstead [] determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy") (citation omitted); *Amerisure*, 622 F.3d at 815 (explaining that, under Illinois law, "[t]he factual allegations of the [underlying] complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend") (cleaned up, citation omitted).

### C. Application to the Underlying Lawsuit

Recognizing that doubts must be resolved in favor of coverage, *see id.*, the Court turns back to careful review of that complaint. The Court also assumes that it may look beyond the allegations of the complaint, *see Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018-19 (Ill. App. Ct. 2010) (collecting cases), and, for the purposes of this motion, presumes that a settlement letter by the plaintiffs in the underlying case and submitted by Ledo's, Inc. is among those items that may be considered. Ledo System and Ledo Carryouts do not purport to bring a separate "trade dress" claim labeled as such, but Ledo's, Inc. argues that the complaint essentially does so by mentioning their pizza's "distinctive rectangular presentation," the "uniform business format utilizing specially designed equipment, methods, procedures and designs at Ledo Pizza® franchise locations," the "certain image" they "prescribe" for and that customers expect from "the Ledo Pizza® name," and statutory requirements "that [Ledo System and Ledo Carryouts] affirmatively act to protect the trademark and trade dress." (Ledo's, Inc. Mem. in Supp. of MSJ, Dkt. #30, pg. 7.)

The Court disagrees with Ledo Inc.'s assertion that those references arguably state a trade dress claim. Merely indicating that Ledo Pizza® has achieved a particular image and product quality does not amount to a claim that Ledo's, Inc. has in some identifiable way infringed upon the "total image and overall appearance" that would make up the trade dress for Ledo Pizza® or the related franchises (as opposed to infringement of Ledo Pizza® mark itself). Even grafting onto the complaint the additional allegations Ledo's, Inc. relies on from the heavily redacted

settlement letter, such as Ledo System's and Ledo Carryouts' proprietary rights in a particular Ledo Pizza® "sauce, [] cheese, thin crust," and presentation, the Court discerns no trade dress claim—in other words, the Court finds no allegation that Ledo's, Inc. has appropriated those traits so as to cause conceivable customer confusion.

As AMCO argues, this case, in fact, much more closely resembles *AU Electronics*, in which the state-court plaintiff alleged that the insured's customers purchasing reprogrammed and "unlocked" phones usable on any cellular network would be misled into believing that they were buying Sprint or T-Mobile phones that in fact were Sprint or T-Mobile in exterior and logo only. 82 F. Supp. 3d at 807-08. The external appearance of the phones apparently was indistinguishable from phones sold by Sprint and T-Mobile, but the Court held that the complaint did not state a "trade dress" claim because there was no suggestion that confusion might stem from "the size, shape, color, etc.—the 'look and feel'—of the phones." *Id*. at 810-11. Despite T-Mobile's passing reference to packaging, the "context" of the underlying complaint demonstrated that "[the insured's] 'use of the [plaintiffs'] Marks' on the resold phones was what confused customers—not that [the insured] was selling imitation phones that, independent of the Marks, happened to look like [plaintiffs'] phones." *See id.* at 811-12 ("[Insured's] out-of-context reading of 'package' therefore does not convert this straightforward trademark claim into one for trade dress.").

Similarly, although Ledo System and Ledo Carryouts fleetingly mention the attributes of their products and their obligation to protect their trade dress from infringement, under even the most generous reading, the complaint cannot be read to claim that the presentation of the pizza (or any other item) Ledo's, Inc. sells itself might mislead consumers. Notably, Ledo System and Ledo Carryouts do not allege any facts that might suggest that Ledo's, Inc. modeled its overall appearance after that used in connection with their marks. On the contrary, they emphasize differences in the sales model, as they do not provide delivery, while Ledo's, Inc. does. Even assuming that a proprietary sauce or other ingredients might constitute elements of trade dress, which is questionable, *see New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 883 (S.D. Tex. 2014) (explaining that "any [] allegation of a "trademark in the flavor of food" would be "implausible, given that the flavor . . . has a functional purpose")), Ledo System and Ledo Carryouts simply do not include any facts suggesting that Ledo's, Inc.'s pizza shares any of those attributes with a Ledo Pizza®. Instead, as in *AU Electronics*, reading the allegations as a whole, Ledo System and Ledo Carryouts claim that the alleged use of the trademark in conjunction with different pizza and other items causes consumer confusion. Thus, like the claim in *AU Electronics*, it is not a trade dress claim; that conclusion is the same even if the complaint itself had claimed that Ledo's, Inc. cuts its pizza in squares, which comes nowhere near enough for an inference that Ledo's, Inc. might have appropriated the "overall look and feel" of the plaintiffs' pizza so as to constitute a claim regarding trade dress.

The facts here also align with those in *Greenwich Insurance*, 882 N.E.2d at 1211-12, in which the underlying complaint alleged trademark infringement based upon the insured's use of the plaintiff's trademark in the sale of the insured's replacement filters for use with the plaintiff's trademark air cleaners. It was the use of the mark, not the overall look and feel of the filters, that was alleged to cause consumer confusion. That factor distinguishes this case from the one on which Ledo's, Inc. relies, *Grinnell Mut. Reinsurance Co. v. S.B.C. Flood Waste Solutions, Inc.*,

No. 18 C 4922, 2020 WL 6940980, at *9 (N.D. Ill. Nov. 25, 2020), in which the underlying complaint alleged that the defendant had used a similar company name and patterned its logo's color scheme and overall theme and ornamentation after the plaintiff's. Allegations tending to suggest a claim of usurping the overall image are lacking from the underlying complaint in this case.

Neither the complaint nor settlement-posturing assertions of a distinct business model and proprietary ingredients so much as hint that Ledo's, Inc. has wrongfully appropriated the look and feel of Ledo Pizza® such that Ledo's, Inc.'s presentation might cause confuse consumers as to the source of the pizza. Instead, Ledo System and Ledo Carryout consistently contend that Ledo's, Inc.'s *name*, in conjunction with similar food products, is likely to cause confusion with the Ledo Pizza® mark.[3] The Court will not inject into the complaint assertions that are not there. *See Amerisure*, 622 F.3d at 814 (explaining that "we are not permitted simply to speculate about possible factual allegations that are absent . . ." and that allegations that "were 'fully consistent with losses suffered through contract failure' . . . did not even potentially implicate 'property damage' under the CGL policies and thus did not satisfy the Illinois duty-to-defend standard"). Because the underlying complaint does not, even liberally construed, state a trade dress claim, AMCO does not have a duty to defend Ledo's, Inc. in the underlying lawsuit.

This also absolves AMCO from indemnifying Ledo's, Inc. *See Resol. Tr. Corp.*, 620 N.E.2d at 1081 ("[W]here there is no duty to defend, there will be no duty to indemnify . . . ."). It also means AMCO is not liable for breach of contract, *see TJBC, Inc. v. Cincinnati Ins. Co., Inc.*, No. 20-CV-815-DWD, 2021 WL 243583, at *5 (S.D. Ill. Jan. 25, 2021) ("[B]ecause [it is] predicated on an interpretation of [the insurer's] policy that the Court cannot accept, the Court also dismisses [the insured's] count[] for breach of contract . . . ."), or subject to liability under 215 ILCS 5/155. *See Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 780 (N.D. Ill. 2011) ("If [the insurance company] proves its [declaratory judgment] claims, it obviously has not violated Section 155 because it owed [the insured] no coverage whatsoever.").

For the foregoing reasons, the Court grants AMCO's cross-motion for summary judgment and denies Ledo's, Inc.'s motion for summary judgment.

## CONCLUSION

Defendant Ledo's, Inc.'s motion for summary judgment [29] is denied. Plaintiff AMCO Insurance Company's cross-motion for summary judgment [32] is granted. Judgment is entered in favor of Plaintiff and against Defendant Ledo's, Inc. as to both counts in the complaint and on Ledo's, Inc.'s counterclaims. This case is set for status on 2/16/22 at 10:15 a.m., for Plaintiff to indicate its intent with respect to the remaining Defendants and next steps.

---

[3] The Court, of course, expresses no opinion upon the likelihood of confusion.

**DATE:**  February 4, 2022

                                                                          _____
                                                                          **Hon. Ronald A. Guzmán**
                                                                          **United States District Judge**

10